The PRESIDENT
delivered the opinion of the court.
This being an application to a Court of Equity, to restore a lost deed to its legal validity, it becomes important to consider whether the deed, if restored, has any legal force. It is *the deed of the grandfather, for slaves, to which he had, at the time, no title. For upon the state of the case, the title appears to have been in Applebury the father.
But it is said, that this deed was made with the consent and privity of Applebury, and therefore ought to bind him; to this there are two answers. 1st, It is admitted, that if a man has an equitable title only, and stands by, and suffers another to purchase without disclosing his title, he is guilty' of a fraud, which shall defeat him of his equitable claim. But it is supposed, that a legal claim could not be so lost, even in favor of a purchaser; and it is doubted, if even an equitable claim would be destroyed by that circumstance, in the case of a mere voluntary conveyance.
But 2dly, Suppose the children had this equity against their father, it is but an equity, which may be opposed by circumstances of superior equity on the other side, especially on behalf of the grandfather, who was a fair purchaser, and had his deed delivered to him without the same having been recorded.
The whole transaction was fair. The grandfather -who was bound to give Buey to Applebury, conveyed her to his children with his consent and approbation. The next day an agreement was made between the same parties to substitute a valuable gonsideration for Buey, and this, not with any fraudulent view, but upon the laudable motive of gratifying the wishes of the slave. The consideration was paid; Buey redelivered; and the deed restored to the I grandfather. And now, the grandchildren are endeavoring to set up this voluntary deed, made upon a contract between their father and grandfather, who agreed without any' fraudulent intention to change the contract, and to cancel the deed, whilst it was in their power to do so, (it not being recorded,) notwithstanding their father’s estate was thereby augmented, in consequence of the consideration paid for Buey. So that they have a chance at least, of receiving an equivalent, if they should get Dinah and the two other slaves purchased with the £60 which the father may give them in lieu of Buey. The grandfather has already paid Applebury his wife’s fortune, and if the plaintiffs were to succeed in this suit, they would compel the grandfather to pay it over again.
Upon the whole, the plaintiffs have neither law nor equity in their favor. The defendant Anthony has both, and the decree of the Chancellor is right. But it may be necessary to distinguish this case from that of Ward v. Webber and wife, *(see ante p. 274) where a voluntary-conveyance by a father to a child, being cancelled by the father, was restored to its legal validity:
1st, In that case the father was proprietor of the estate, and had a power to convey. In this the grandfather had no title and this original defect was to be supplied in equity' by the consent of the father, and so liable to be opposed by superior equity.
2dly, In that case the deed was delivered into the daughter’s keeping, who was of full age, and was privately cancelled by the father, without her consent: in this, the children, if they were in being, had no hand in the transaction, nor had they even the deed. The father who consented to accept it, relinquished it the next day, and gave it up to the donor.
3dly, The defendant in that case, was a mere volunteer, here, he is a fair purchaser, for a valuable consideration, so that the cases are wholly dissimilar, and the decree perfectly reconcileable.
Decree affirmed.